WILLIAM LAKE, guardian, plaintiff in error, *vs.* ANN MATILDA HARDEE, defendant in error.

| 55 | 667 |
|---|---|
| 114 | 561 |
| 55 | 667 |
| 130 | 355 |

1. Where objections arising upon the face of the verdict are urged against the making of a decree and are overruled, the same matters, if appropriate to a motion for a new trial, may be included, with others, in such motion subsequently made during the term. The prior decision on the objections will be considered as rendered subject to a more formal and regular examination of the several matters by motion for new trial.

2. Want of fulness in the finding of the jury, or failure to embrace therein all the material issues of fact, is cause for new trial in any equity case: *50 Georgia Reports, 395.* It is equivalent to a mistrial at law: 23 N. Y., 539; *27 Georgia Reports, 469; 49 Ibid., 458.*

3. Where the complainant waives discovery, he undertakes to prove all the material allegations in the bill; and whether this is done on the trial or not, is a question for the jury. The judge, as chancellor, can decide no material fact. He may submit the case as a whole to the jury, or he may carve it into the several questions of fact which it involves, and instruct the jury to answer each question separately. If the latter course be adopted, the questions and answers, taken together, should disclose a finding by the jury of every fact requisite to a full and final decree upon the whole merits of the controversy.

4. In the present case, a charge of fraud was involved as a fundamental element of the bill, and without a finding upon that question, either general or special, there could be no decree for the complainant: *43 Georgia Reports, 439.*

5. The amount of the recovery was also to be ascertained by the jury and not by the judge, as there was no report by a master or auditor unexcepted to.

6. Newly discovered evidence to the effect that a witness who has died since testifying, made previous colloquial statements in direct conflict with his testimony, is not ground for a new trial.

New trial. Practice in the Superior Court. Equity. Verdict. Discovery. Before Judge TOMPKINS. Chatham Superior Court. February Term, 1875.

Ann Matilda Hardee filed her bill against William Lake, her former guardian, making, in brief, this case:

Lake, as her guardian, on December 20th, 1862, sold to J. G. Mehrtens, two slaves, named Solomon and Peter, the property of complainant, for $1,600 00. Since said sale she became of age and requested from defendant a settlement. Though often requested he failed to comply until June 13th, 1866, when he represented that he sold said slaves for Confederate money, and that the amount received by him ($1,-600 00,) at the time of said sale, was only worth $400 00 in gold. He then paid to complainant $400 00 in the currency of the United States, on condition that she would release him from all liability as guardian, which she accordingly did.

Until December 10th, 1872, complainant confided in these representations of defendant, believing them to be true, but she charges that said representations were untrue, and that said defendant knew them to be false at the time he made them; that he made such false representations to complainant with the intention, and for the purpose, of defrauding her out of the proceeds of said slaves; that he took advantage of the confidence which she blindly reposed in him as her guardian, in requiring her to give him said release. That defendant did not sell said slaves for Confederate money, but, on the contrary, refused to sell them for such currency, and demanded and received from the purchaser, bills of the Marine Bank of Georgia, worth at that time and at the time of the settlement, dollar for dollar in gold; that these facts were not discovered by complainant until the day and year last aforesaid.

But for these false representations, complainant would never have settled with defendant as aforesaid, or given him any receipt or release, but would have demanded from him the bank bills which he received or their equivalent.

The defendant's representations as to the value of Confederate money at the time of said sale were false and fraudulent. She discovered, on the day and year last aforesaid, that Confederate money, at the time of said sale, was worth two

for one in gold.   Upon this basis complainant was entitled to $533 33, with interest to the time of settlement.

Waiving discovery, complainant prays that defendant may be decreed to give up said release, to account for the amount so fraudulently withheld from her and for general relief.

The defendant answered that said slaves were sold for $1,-600 00 in Confederate money and not for bank bills; that the proceeds thereof were retained by defendant to reimburse himself for advances made, in money equivalent to gold, for the support and education of complainant during the period commencing with the year 1857, up to the time of sale.   He denies that he settled in June, 1866, with complainant in reference to said slaves, but alleges that said settlement was as to other negroes sold by him, in 1863, for Confederate money.

Defendant asserts that, at the time of the settlement aforesaid, complainant was of age and knew all the facts and circumstances connected with her property at any time in the hands or control of defendant.   Denies all charges of false representations and of concealment.

Much testimony was introduced, immaterial here.

The chancellor submitted the following issues of fact to the jury :

1st.  Whether or not money received by Lake, or his agent, for two negroes, Solomon and Peter, in 1862, was received in solvent bank bills or in Confederate money ?

2d.  What was the value of Confederate money in gold on 20th December, 1862 ?

3d.  What was the value of bank bills of the following banks, to wit: Marine, State of Georgia, Central Railroad, and Bank of Savannah, on 20th December, 1862?

4th.  Whether the settlement between complainant and defendant, on June 12th, 1866, was made upon the understanding that the negroes, Solomon and Peter, had been sold for solvent bank bills or for Confederate money ?

5th.  Whether or not Lake knew that Mehrtens paid the money in bank bills to Etheridge, and withheld that knowledge from complainant upon his settlement with her in 1866?

6th. As a matter of fact, whether Lake ever received bank bills from Etheridge for the sale of said negroes ?

The jury having returned for instructions, the chancellor further charged them as follows :

1st. State who was agent.

2d. State who withheld fact from complainant in 1866.

3d. State who was agent, and whether or not Lake knew if bank bills were received in 1862.

The jury returned the following verdict :

1st. " We find that the money paid for the two negroes, Solomon and Peter, in 1862, was in solvent bank bills.

2d. " We find the value of Confederate money in gold, in December, 1862, as three for one.

3d. " We find the value of bank bills of the Marine, State of Georgia, Central Railroad, and Bank of Savannah, in December, 1862, to be worth less ten per cent. in gold. Central Railroad and Marine Bank bills at par value with greenbacks ; bills of Bank of State of Georgia, forty cents in greenbacks ; Bank of Savannah, fifty cents in greenbacks, after the war.

4th. " The basis of settlement between defendant and complainant was in Confederate money.

5th. " We find that Lake's agent, Etheridge, did receive bank bills in payment for the negroes, Peter and Solomon, and that Lake did withhold the fact from complainant.

6th. " We find that Lake did receive bank bills through his agent, Etheridge, for negroes, Peter and Solomon, in 1862.

To the entering of a decree on this verdict the defendant objected on numerous grounds, but mainly because it did not cover the issues involved, was too uncertain, and did not fix any definite amount as due by defendant to complainant.

These objections were overruled, and on April 28th, 1875, the chancellor, after fully reciting the findings of the jury, adjudged that the complainant recover of the defendant $906 67 principal, together with interest at seven per cent. per annum for six years, up to December 20th, 1868, amounting to $380 80; the principal and interest amounting to the

Lake *vs.* Hardee.

sum of $1,287 47. Further, that interest at the rate of six per cent. per annum, annually compounded, be recovered on the amount last aforesaid from December 20th, 1868, to December 20th, 1874. Further, that if the defendant fails to pay the amount thus ascertained to be due within ten days from the date of this decree, that interest at the rate of six per cent. per annum do continue to be annually compounded thereon until paid.

On May 7th, 1875, during the same term, defendant moved in arrest of judgment and to set aside said verdict upon substantially the same grounds as were presented in objections to the rendition of the decree, and upon others not material.

Before the adjournment of the same term, defendant also moved for a new trial upon the following grounds, to wit:

1st. Because the court erred in submitting the aforesaid issues of fact to the jury, and those alone.

2d. Because the court erred in not submitting to the jury the issue made by the defendant's answer, that the proceeds of the sale of the slaves were paid out and received by defendant to reimburse himself for advances made in money equivalent to gold, for the support and education of complainant.

3d. Because the court erred in confining the jury to the value of Confederate money in gold on December 20th, 1862.

4th. Because the court erred in confining the jury to the value of the bank-bills of the various banks named, in gold on December 20th, 1862.

5th. Because the verdict does not cover all the material issues between complainant and defendant.

6th. Because the verdict does not find whether defendant accounted to complainant for the proceeds of the negroes in Confederate money at the rate of three for one in gold, or at an equivalent of dollar for dollar in gold.

7th. Because the verdict does not determine whether the defendant, at the settlement of June 12th, 1866, made misrepresentations to complainant as to the kind of currency in which he received payment for said negroes, whereby complainant suffered loss or damage.

8th. Because said verdict did not find any amount as due from defendant to complainant.

9th. Because the verdict is contrary to evidence and to law.

10th. Because the decree does not follow the verdict and has no verdict to support it.

Another ground was added based on the newly discovered evidence of one Talbird. This was to the effect that Mehrtens, soon after the purchase of Solomon and Peter, told him that he had paid for them in Confederate money. Mehrtens, on the trial, had testified that he had paid for them in the bills of the various banks heretofore enumerated; that defendant had declined to receive Confederate money. This witness had since died.

On July 31st, 1875, the day of the adjournment of the May term, the motions in arrest of judgment and for new trial were overruled, and defendant excepted. On the same day the bill of exceptions was certified.

HARTRIDGE & CHISHOLM, for plaintiff in error.

R. R. RICHARDS; J. V. RYALS, for defendant.

BLECKLEY, Judge.

The opinion of the court is given at large in the head-notes.

Judgment reversed.