· GREER, administrator, *et al. vs.* WILLIS *et al.*

1. If questions propounded by the chancellor to the jury in an equity case, though substantially covering the whole case, are not sufficiently full to satisfy the parties, the proper remedy is to request other questions to be put.

2. The answers returned by the jury in this case were supported by the evidence.

3. The verdict was not contrary to law.

4. If the verdict be right, errors in the decree founded thereon will not necessitate a new trial. The proper mode is to except to them and have them corrected.

5. Though in a suit against an administrator the judgment was *quando acciderint,* it did not bar a bill against the administrator (he refusing to sue) and others, to bring in and subject certain assets which the administrator had never had in hand.

6. There is nothing in the exception to parties, made in this case after verdict and decree.

· Practice in Superior Court. Practice in Supreme Court. New Trial. Decree. Judgments. Before Judge CRISP. Macon Superior Court. December Term, 1881.

This was a bill filed by Willis *et al.,* in which they set up about the following facts : That Jas. J. Fokes, while in life, became indebted to the complainants in the bill certain amounts, and that afterwards, in the year 1870, that he departed this life intestate, leaving a large estate, and these debts unpaid. That at the January term, 1871, of Macon court of ordinary, letters of administration were granted to Josephine E. Fokes, the wife of James J. That Josephine proceeded to administer said estate until July, 1872, when she died leaving said estate unrepresented, and these debts unpaid. That soon after the death of Josephine, George V. Hunter took out letters of administration on the estate of Josephine E., and administered the same in full, and has been dismissed as such administrator. That in the year 1879, Greer was appointed administrator *de bonis non* on the estate of James J. Fokes,

and that George V. Hunter was appointed guardian of J. A. H. Fokes and James V. Fokes, minor children of James J. and Josephine E. Fokes, in August, 1872, and is still their guardian. That James J. Fokes died, seized and possessed of a valuable estate of real and personal property. That the personal property was absorbed during the administration of Josephine. That James J. Fokes, prior to his death, had all of his personal property exempted under the homestead laws of this State. That at the time of his death he had possession of six or seven hundred acres of land under a deed from J. W. Armstrong to Mrs. Josephine E. Fokes; that James J. Fokes and Josephine E. Fokes were married in 1860, and that the deed from Armstrong to Josephine E. Fokes was made in March, 1866. That Fokes went into possession of said lands and controlled the same until his death, that under the laws no separate estate vested in Josephine E., but title vested in James J. Fokes; that the purchase money was paid by James J. and not by Josephine E. That upon completing the administration of the estate of Josephine E., G. V. Hunter became the guardian of J. A. H. and James V. Fokes, minors of James. J. and Josephine E. and as such guardian the lands mentioned in the deed from Armstrong to Josephine E., were received by him for his said wards, and that he now holds them as such guardians. That upon the death of Josephine E., administratrix of James J. Fokes, that the next of kin neglected to administer on the estate of James J., and that it so remained until 1879, when Allen H. Greer was appointed administrator *de bonis non*. The bill charges that the lands mentioned is the property of the estate of James J. Fokes, and subject to pay his debts; that repeated demands have been made of Greer to sue for and recover said lands as the assets of the estate of James J. Fokes, and he has refused to do so.

That said lands are in the possession of G. V. Hunter, guardian, and that the rights of creditors are endangered, and no way left to secure their rights except by bill.

That Allen H. Greer has no assets in hand to pay said debts, and there is no other property known to complainants belonging to James J. Fokes' estate subject to their debt.

Prays that the lands be recovered by A. H. Greer, administrator, and go into his hands to pay their debts, and that a decree be had ordering sale to be made, and that from proceeds of sale their debts be paid.

This bill was amended as follows:

That each of the complainants had instituted suit on their claims in the bill mentioned against A. H. Greer, and obtained judgment *quando acciderint.* That all the suits, except one, were instituted before the filing of the original bill, and that to each of these suits A. H. Greer, administrator *de bonis non,* pleaded *plene administravit,* and that upon these pleas judgment *quando acciderint* was entered in favor of plaintiffs.

That after the death of Josephine E., the ordinary had actual notice that the estate of James J. Fokes was unrepresented, but took no steps to have an administrator until complainants moved the ordinary to have administration *de bonis non.* That until a short time before said administrator *de bonis non* was appointed, they had no positive knowledge that the lands mentioned in said bill were the property of the estate of James J. Fokes. That at and previous to the making of the deed by Armstrong to Josephine, that James J. was insolvent, and continued so till he died.

That James J..Fokes, while in life, used and controlled said land, used the rents, etc., and was in possession when he died. That the administratrix recognized the land as belonging to James J's. estate, and administered a part of the same as such.

Prayer that amounts due them may be ascertained, and same paid out of assets of estate.

Hunter answered as follows: Admitted James J. Fokes was dead; knows nothing of estate's indebtedness; that

Josephine E. Fokes was administratrix, and afterwards died, and that he became administrator on her estate, administered the same fully, and had been discharged. Has heard that A. H. Greer was appointed administrator *de bonis non;* and respondent was appointed guardian of the minor children of James J. and Josephine E.; denies that James J. was seized in his own right of the lands; estate of James J. consisted of little property. Denies that the money that paid for the Armstrong land was James J's., or that the land is liable to pay his debts; had no knowledge of debts nor any fraudulent intent.

A. H. Greer, answered: Admits allegations of bill, except as follows: Had no knowledge of any debt against estate when he became administrator, except Westbrook's; that his information was that land belonged to Josephine E., and not to James J's. estate, as it was purchased with money that she received from her father's estate. Does not believe that James J. Fokes was insolvent at the time deed was made by Armstrong to Mrs. Josephine; was requested to bring suit for recovery of land by counsel, but refused to do so, as he did not believe the land belonged to James J's. estate, but the creditors knew that these lands had been administered as the estate of Josephine E. Fokes, by Hunter, and did not assert their rights; a portion of this land was sold by Josephine E. to settle off a debt due by James J. to a ward of his, which Josephine endeavored to pay out of her own estate.

It is not necessary to set out the evidence. The following were the questions propounded by the chancellor and the answers returned by the jury:

(1.) Who paid the consideration of the deed from J. W. Armstrong to Josephine E. Fokes? Did she pay it, or did James J. Fokes, her husband, pay it? Ans. It was his, James J. Fokes', money that paid for the land.

(2.) Was James J. Fokes solvent or insolvent at the time said deed was made? Did James J. Fokes re-

tain, outside of the property conveyed by the deed, a sufficient amount of other property to pay his just debts or liabilities then existing or outstanding? Ans. He did not save enough to pay his just debts then existing or outstanding.

(3.) Did Josephine E. Fokes suffer James J. Fokes to deal with said property as though it was his own, and get credit from Willis, Lothrop & Co., and others, upon the faith that such property belonged to him? Ans. He dealt with the property as his own.

The chancellor entered a decree to the effect that the lands be turned over to the administrator *de bonis non,* that they be sold by him, the debts of complainants paid according to their priorities, and the balance distributed as belonging to the estate of James J. Fokes.

Defendants moved for a new trial, which was refused, and they excepted. For the other facts, see the decision.

R. G. OZIER; W. S. WALLACE, for plaintiffs in error.

J. W. HAYGOOD; HALL & SON; T. P. LLOYD; W. H. FISH, for defendants.

JACKSON, Chief Justice.

This bill was filed to subject certain property in the hands of a guardian of minors to pay debts of their father. It was brought against the administrator *de bonis non* of the father's estate, who had refused to sue for the property, and the guardian of the wards, and the prayer is that the property be turned over to the administrator *de bonis non,* that he sell it and pay the debts The jury, in answer to certain questions propounded by the court, found substantially that the father's, not the mother's, money (the wards claiming under the mother) paid for the land which the bill sought to subject, that at the time the deed was made to the wife by Armstrong, from whom the purchase was made, the husband did not retain prop-

erty enough to pay his just outstanding debts, and that he controlled the land bought as his own, and thereupon the chancellor decreed that the tract of land be turned over to the administrator *de bonis non,* that he sell it to pay the debts of these creditors, which are judgment debts, according to their priorities, and distribute the balance of the fund, if any, according to law, as the estate of the father.

To this decree no exception is taken, except in the motion for a new trial and as a reason therefor, and which, under the ruling of this court, re-affirmed more than once, amounts to no exception at all, because if the verdict be right there is no need to try again before the jury, though the decree may be bad. If, however, in this case it were excepted to, we think the facts admitted in the pleadings and those found by the jury ample to authorize this decree.

Should a new trial before the jury have been granted?

1. The first ground is that the questions were not such as should have been submitted. It seems to us that they brought out the great facts on which the equities of the parties must have turned. If the defendants wished other questions answered, they should have named them to the court, and doubtless, if proper, they would have been propounded also. 59 *Ga.,* 485 ; 58 *Ib.,* 140 ; Sup. to Code, 40.

2. The second ground is that the answers to the second and third questions are not supported by the evidence, but contrary to the weight of it. Those answers are that when the deed was made to his wife, the husband did not retain enough property to pay his debts, and that he dealt with the land as his own property. The jury passed upon the testimony, the presiding judge approved it, and we cannot say that there is not plenty of evidence to support the finding. Certainly there was no abuse of discretion.

3. The third ground is that the verdict is contrary to law ; but it is not specified in what particulars or on what grounds it is so ; and we are unable to see why or wherein.

The absolute deed was made directly to the wife before the act of 1866, and vested the title in the husband. The proof is overwhelming that his money paid for the land, and that he controlled it. The wife, as his administratrix, turned over a part of the land to pay a trust debt of the husband under an award of arbitrators; and taking all the facts, there can be no doubt that the property belonged to the husband, and is liable to pay his debts.

4. The fourth and fifth grounds are in respect to the decree, and cannot affect a motion to try again before the jury, as already mentioned.

5. The sixth is that the judgments *quando acciderint* settled the question of no assets against these parties, and they cannot re-open that judgment. But how did it settle it, and what is that judgment *quando ?* It is simply that the administrator has not in hand any assets wherewith to pay the debt at the date of the judgment, and it is for his protection. If, afterwards he should recover assets, or, as in this case, the creditors, by bill, recover them for him, will that judgment estop them from getting their money? Clearly not.

The *quando,* the time when the assets *acciderint,* fall in, come to his hands, will have arrived, and the time when the judgment bears fruit, the reaping time, will have been reached. The administrator is still protected, but the land, recovered for him and despite his refusal to sue, must answer the judgments and become the assets to pay them. 7 *Ga.,* 149; 59 *Ib.,* 550.

This case is distinguishable from that last cited in the 59th. Here the administrator never was in possession of the land, and could not pay debts with it or sell it for that purpose until recovered.

6. The seventh and eighth grounds are to the effect that Mrs. Josephine Fokes' estate was not represented and was no party, and that the effect of the whole transaction will be to find against it without a hearing. The reply is that, if no party, it is not affected and the decree

will not bind it, but substantially it was represented. These children are her heirs at law, and her administrator is their guardian. These objections go, however, rather to the decree than to the verdict, and there is no exception properly made to the decree on this ground, for the reason that it is in the motion for a new jury trial, and made to obtain that; besides it should have been made a ground of demurrer for want of parties, and excepted to, if overruled at the time.

In view of all the facts, we think there is equity in the bill. The parties were without remedy at law; they were entitled to be paid out of this land; they could get at it in no other way; and having a clear right, equity will furnish them a remedy. Code, §§3081, 4178; 61 *Ga.,* 373.

Judgment affirmed.